O

# United States District Court
# Central District of California

| | |
|---|---|
| MONICA BARNETT,<br><br>            Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>            Defendant. | Case № 2:20-cv-04896-ODW (JEMx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]** |

## I.     INTRODUCTION

Plaintiff Monica Barnett brings this action against her former employer, Defendant Costco Wholesale Corporation, asserting Costco violated the California Fair Employment and Housing Act ("FEHA"). (Decl. Matthew S. McConnell ISO Removal Ex. A ("Compl."), ECF No. 1-1.) Barnett claims Costco forced her to resign her long-term employment with Costco after she suffered a workplace injury and Costco failed to accommodate her resulting physical disability. (Compl. ¶¶ 15–35.) Costco moves for summary judgment, or partial summary judgment, as to all claims. (Mot. Summ. J. ("Motion" or "Mot."), ECF No. 23.) For the reasons discussed below, the Court **GRANTS** Costco's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.  BACKGROUND

The Court finds the following facts supported by evidence and undisputed, unless otherwise noted. Barnett began working for Costco in 1991. (Def. Statement Uncontroverted Facts ("DSUF") 1, ECF No. 25.) For her entire employment with Costco, Barnett worked at the Inglewood location, a union warehouse. (DSUF 1–2.)

### A.  November 2017 Injury; Light Duty; Medical Leave; August 2018 JAM

In November 2017, Barnett was working as a full-time stocker/front-end cashier when she injured her knees and wrist. (DSUF 3, 77.) She filed for workers' compensation and was placed on a light-duty temporary assignment for twelve weeks, ending February 5, 2018. Thus, as of February 6, 2018, she was placed on medical leave. (DSUF 4–7.) On June 19, 2018, Barnett's doctor declared her injury "permanent and stationary," and issued permanent work restrictions barring Barnett from squatting, kneeling, or bending her knees. (DSUF 8.)

After receiving Barnett's work restrictions, Costco initiated a Job Assessment Management Session ("JAM") to explore possible accommodations. (DSUF 9.) On August 23, 2018, the parties met and reviewed the essential elements of Barnett's stocker/front-end cashier position and, where an element potentially violated a restriction, what accommodations might be possible. (DSUF 11–12.) Costco concluded that Barnett was unable to perform many essential functions of the position. (DSUF 13.) Barnett contends that, at this meeting, she proposed accommodations that Costco summarily rejected. (Pl. Statement Genuine Disputes ("PSGD") & Additional Undisputed Facts ("PAUF") 13–14, ECF No. 31-1.) The parties considered potential reassignment to one of two then-available part-time positions. (*See* DSUF 15.) Barnett declined both positions and remained on medical leave. (DSUF 15–16.)

### B.  August 2018 through May 2019, Continued Medical Leave

Following the August 2018 JAM, Costco sent Barnett a letter summarizing their meeting, advising her that Costco's policy permitted her to remain on medical leave for one year, and noting that Costco would send her weekly emails with available

positions at the Inglewood warehouse and four other warehouse locations Barnett had selected. (DSUF 17.) Barnett did not respond. (DSUF 22.)

Barnett remained on medical leave through June 2019. (*See* DSUF 23, 56.) Although Barnett attempted to return to work in her regular position without restrictions in January 2019, she worked only three days before she was unable to continue due to recurring pain.[2] (DSUF 29.) In February 2019, Barnett's doctor revised Barnett's work restrictions as follows: no lifting greater than fifteen pounds; no kneeling, squatting, or stooping; no running or jumping; no climbing or working at heights; no prolonged standing/sitting continuously for more than an hour without at least a fifteen-minute break. (DSUF 31.) The doctor's official report, issued in March 2019, described the same restrictions. (*See* PSGD 31.) After receiving the doctor's report, Costco initiated another JAM, which convened on May 6, 2019. (DSUF 34.)

From the initial JAM in August 2018 to the second JAM in May 2019, Costco sent Barnett a total of 134 available job openings. (DSUF 23–24.) Barnett did not apply for or request placement in any of them. (DSUF 25–26.) Barnett now asserts she expressed "interest" in "about 1–3" positions, but she did not pursue any of the 134 positions based on her belief that it would be "futile" because she "understood" Costco would not allow her to have them due to her work restrictions. (PSGD 25–26.)

C.  **May 2019 JAM**

At the May 2019 JAM, the parties again reviewed the essential requirements of Barnett's regular position. (DSUF 36.) Costco again found that many of the essential duties potentially violated one or more restrictions, (DSUF 36), although Barnett now contends that Costco interpreted the restrictions too narrowly, (*see* Opp'n 10–11; PAUF 117). Costco ultimately concluded Barnett could not return to her regular position with or without reasonable accommodation, and Barnett remained on leave. (PSGD 36.) The meeting notes indicate the parties discussed an available

---

[2] The parties agree that, under the collective bargaining agreement governing Barnett's union, this brief return did not interrupt the "continuous and unbroken" character of her leave. (DSUF 30.)

"Admin/Back-up" position at the May 2019 JAM, but the parties disagree about whether Barnett stated an interest in it. (DSUF 38, 40; PSGD 38, 40.)

On May 7, 2019, Costco sent Barnett a letter recapping the May 2019 JAM and the foregoing history. (DSUF 42.) The letter informed Barnett that she had been on leave since February 6, 2018, longer than Costco's policy permitted, and unless she was interested in any of the postings Costco had sent or any additional locations, or anticipated her work restrictions changing in the near future, it may be "appropriate to move forward with separating [Barnett's] employment." (DSUF 43–44.) Costco requested that Barnett respond by May 21, 2019. (*See* DSUF 44.)

**D.     May 2019 through September 2019, Reassignment & Resignation**

On May 17, 2019, Barnett emailed various Costco personnel and stated she felt that she was being forced out, and that there were job postings she should have received but did not. (PSGD 46.) On or after May 9, 2019, Barnett received text messages from a co-worker with pictures of two part-time positions: (1) Admin Back Up Cross Training and (2) Membership Assistant Cross Training. (DSUF 47–48, 84.) On May 21, 2019, Barnett emailed her Warehouse Manager and others and stated that she "would like to accept" the part-time Admin Back Up Cross Training position. (PSGD 49.) Costco's Regional Vice President, Shawn Parks, responded and explained that Barnett was not eligible for that position because it provided back up coverage only as-needed and the employee must work in their home department the rest of the time. Barnett was ineligible because she did not have a position in a home department within her restrictions. (DSUF 51; Decl. Matthew S. McConnel ISO Mot. Ex. 23 ("May 21 Letter"), ECF Nos. 26, 26-22.)

Parks then offered Barnett a full-time Optical Assistant position at her home location of Inglewood. This position was non-union because all optical positions are non-union. Parks explained that if Barnett chose to decline, "it may be appropriate to separate [her] employment." (May 21 Letter.) In an email, Barnett expressed concerns about meeting the Optical Assistant position's production quotas and its

non-union status, but after speaking with individuals from Costco's corporate office, on May 24, 2019, Barnett accepted the Optical Assistant position, on a part-time basis. (DSUF 52–55.) On June 3, 2019, Barnett returned to work and began training as an Optical Assistant. (PSGD 56.)

Barnett reported for work and trained as an Optical Assistant on June 3, 4, 8, 10, 17, and August 8, and 9. (DSUF 57.) However, she never completed the training and struggled to learn the position. (PSGD 58.) Barnett took vacation, sick leave, and personal time off until, on August 29, 2019, she submitted her resignation letter in person to the Inglewood warehouse. (DSUF 59, 61.) On September 1, 2019, Barnett also emailed several Costco personnel and stated that she was "resigning/retiring from Costco in [her] current job title as an Optical Clerk." (DSUF 62.) She gave the sole reason for resigning as "current medical restrictions within the warehouse," (DSUF 62), but had not communicated with Costco about accommodations or her disabilities while in the optical department, (DSUF 70).

E.  **September 2019 JAM & Resignation**

Costco asked Barnett to reconsider resigning and offered to discuss accommodations. (PSGD 71; Decl. Christina M. Coleman ISO Opp'n ("Coleman Decl.") ¶ 36, Ex. 44 ("Reconsider Resignation Letter"), ECF Nos. 31-2, 31-4.) Thus, on September 27, 2019, the parties met and reviewed the essential functions of the Optical Assistant position. (DSUF 72.) The parties confirmed Barnett was physically able to perform the essential functions of the position within her work restrictions. (PSGD 72.) However, Barnett expressed that "the optical position was not working for her, and that it was tedious and she was having a hard time with training, and [she] did not want to continue in that position." (PSGD 72.) Barnett suggested reassignment to another department or modifications to other positions. (PAUF 216.) Barnett resigned rather than return to the Optical position, which she found "uncomfortable," "tedious and difficult," and "outside her scope of experience." (DSUF 73; PSGD 75.)

### F. Procedural History

On April 23, 2020, Barnett filed this action against Costco, asserting seven claims premised on FEHA violations: (1) disability discrimination; (2) retaliation; (3) failure to prevent discrimination and retaliation; (4) failure to provide reasonable accommodations; (5) failure to engage in a good faith interactive process; (6) declaratory judgment; and (7) wrongful constructive termination in violation of public policy. (*See* Compl. ¶¶ 36–98.) Costco now moves for summary judgment.

### III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp.*, 477 U.S. at 322–23; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986);

*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to her case when she will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

## IV. PRELIMINARY MATTERS

Barnett filed a "Notice of Plaintiff's Changes to Deposition of Monica Barnett," (Coleman Decl. Ex. 2, ECF No. 31-2), to which Costco objects as procedurally and substantively improper, (*see* Def. Objs. Pl. Evid., ECF No. 34). Barnett does not respond to Costco's objection. The Court finds the Notice of Changes procedurally defective, as Barnett signed a separate document rather than personally signing the statement of changes itself. (*See* Coleman Decl. Ex. 2 at 168.[3]) Costco's objection is sustained on this point and the Court does not consider the Notice of Changes. Fed. R. Civ. P. 30(e); *Adams v. Allied Sec. Holdings*, 236 F.R.D. 651, 652 (C.D. Cal. 2006).

Next, Barnett's Statement of Genuine Disputes and Additional Undisputed Facts does not comply with this Court's Orders in several respects. The Scheduling and Case Management Order ("Scheduling Order") directs that each paragraph in a Statement of Uncontroverted Facts, Statement of Genuine Disputes, or Statement of Additional Material Facts "should contain a narrowly focused statement of fact . . . [and] address a single subject in as concise a manner as possible." (Scheduling

---

[3] The Court cites the CM/ECF header in this instance due to the exhibit's non-sequential pagination.

Order 6, ECF No. 11.) "No argument should be set forth in this document." (*Id.* at 7.) "[D]isputing a material fact without any reasonable basis for doing so [or] identifying additional facts in opposition to the motion without any reasonable basis for believing that the additional facts will materially affect the outcome of the motion" is grounds for sanctions under Federal Rule of Civil Procedure 11. (*Id.*) Barnett fails to comply with each of these requirements. (*See, e.g.*, PSGD 36, 72; PAUF 126, 216.) Therefore, to the extent Barnett's PSGD & PAUF includes improper argument, legal conclusions, or unreasonable and unnecessary additional facts, the Court does not consider it in the analysis below.

Finally, Costco specifically objects to certain of Barnett's evidence. (*See* Def. Objs. Pl. Evid.) Objections based on relevance, lack of foundation, and speculation are unnecessary because they inhere in the summary judgment standard. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Further, where the objected evidence is unnecessary to the resolution of the Motion or supports facts not in dispute, the Court need not resolve those objections here. To the extent the Court relies on objected-to evidence without discussion, those objections are **OVERRULED**. *See id.* at 1022.

V.     DISCUSSION

Costco moves for summary judgment as to all claims. Costco first argues that Barnett cannot establish she suffered an adverse employment action, which would defeat her claims for discrimination (Claim One), retaliation (Claim Two), failure to prevent discrimination and retaliation (Claim Three), and wrongful termination (Claim Seven). Costco next argues that Barnett cannot establish that Costco failed to accommodate or engage with Barnett regarding her work restrictions, which would defeat her claims for failure to accommodate (Claim Four) and failure to engage in the interactive process (Claim Five). Costco also seeks summary judgment on Barnett's claim for declaratory relief (Claim Six) and request for punitive damages. The Court considers each claim in turn.

### A. Disability Discrimination—Claim One

Discrimination claims under FEHA are generally subject to a burden-shifting analysis. *See, e.g.*, *Wills v. Superior Court*, 195 Cal. App. 4th 143, 159 (2011). First, the plaintiff must establish a prima facie case of discrimination. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). The employer then bears the burden to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets this burden, the presumption of discrimination "drops out of the picture, and the burden shifts back" to the plaintiff to prove intentional discrimination. *Id.* (internal quotation marks omitted).

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (alteration in original) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 224 (1999)). Thus, to prevail on summary judgment, the defendant-employer must "show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision." *Id.* If the employer meets its burden, then the plaintiff must demonstrate either that the defendant's showing was insufficient or that there was a genuine dispute of fact material to the defendant's showing. *Hanson*, 74 Cal. App. 4th at 225.

To establish a prima facie case of physical disability discrimination under FEHA, "a plaintiff [must] show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and (3) he was subjected to adverse employment action because of his disability." *Doe v. Dep't of Corrs. & Rehab.*, 43 Cal. App. 5th 721, 734 (2019). Costco contends that Barnett cannot establish that she was subjected to an adverse employment action.

An "adverse employment action" is one that "materially affects the terms, conditions, or privileges of employment." *Id.* It "refers not only to 'ultimate

employment actions such as termination or demotion, but also . . . actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement." *Id.* (alteration in original). "Determining whether an employment action is adverse depends on the facts of the case as '[c]ontext matters.'" *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1091 (S.D. Cal. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

Barnett testified that Costco took the following actions against her due to her disability: failed to accommodate her disability, failed to engage in the interactive process, and caused her to quit. (DSUF 78.) She elaborates in her opposition that Costco did this by denying her three positions (Payroll Clerk, Cross Training Admin Back Up, and Cross Training Membership positions), causing her to lose seniority and union benefits, and constructively terminating her. (Opp'n 24–25, ECF No. 31.)

### 1. *Adverse Action—Failure to Accommodate or Engage*

A failure to accommodate an employee's disability or engage in an interactive process does not qualify as the adverse action for a disability discrimination claim. *See Doe*, 43 Cal. App. 5th at 735–36. "Were the law otherwise, every time an employee was denied a requested accommodation, he would be able to 'double dip' by asserting both . . . claims." *Id.* Thus, Barnett's discrimination claim fails to the extent it is based on Costco's failures to reasonably accommodate or engage, as these "cannot form the basis of a disability discrimination claim." *See Kroeger v. Vertex Aerospace LLC*, No. CV 20-3030-JFW (AGRx), 2020 WL 3546086, at *11 (C.D. Cal. June 30, 2020). Accordingly, what remains is Barnett's assertion of discrimination based on constructive discharge.

### 2. *Adverse Action—Constructive Discharge*

Constructive discharge occurs when "the employer's conduct effectively forces an employee to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244 (1994). To establish constructive discharge, a plaintiff must show that her employer intentionally created or knowingly permitted working conditions that were "so

intolerable or aggravated at the time of the employee's resignation that . . . a reasonable person in the employee's position would be compelled to resign." *Gibson v. Aro Corp.*, 32 Cal. App. 4th 1628, 1637 (1995) (alteration in original). The "intolerable conditions" must be "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Grossman v. UPS, Inc.*, No. 13-cv-2824 PJH, 2015 WL 2438066, at *2 (N.D. Cal. May 21, 2015) (quoting *Turner*, 7 Cal. 4th at 1246).

The standard is an objective one and the "proper focus is on the working conditions themselves, not on the plaintiff's *subjective* reaction to those conditions." *Gibson*, 32 Cal. App. 4th at 1636. "Whether conditions were so intolerable or aggravated" that a reasonable person would be forced to resign "is usually a question of fact; however, summary judgment against an employee on a constructive discharge claim is appropriate when, under the undisputed facts, the decision to resign was unreasonable as a matter of law." *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1022 (2009)

Barnett argues that the following conditions were intolerable: the Optical Assistant position was "tedious and difficult," "she didn't understand it," it lacked the seniority and benefits as her previous position, "and it was having an impact on her health." (Opp'n 25.) These are not "working conditions." The seniority and union status are merely terms of employment; the rest describe Barnett's subjective reaction to the new position, i.e., finding it stressful, tedious, and difficult to understand, and feeling disappointed with lesser benefits. Barnett fails to describe, with any factual specificity, the purportedly intolerable work conditions, and thus fails to raise a genuine dispute about whether her work conditions were intolerable.

Moreover, the "frustrations, challenges, and disappointments" inherent in the nature of work, such as learning a new position, cannot constitute "intolerable conditions." *King v. AC & R Advert.*, 65 F.3d 764, 768 (9th Cir. 1995) (finding no

1  constructive termination and observing that "[a]n employee . . . is not . . . guaranteed a
2  working environment free of stress"). For example, in *Grossman*, the court found no
3  constructive discharge where the plaintiff retired after the defendant transferred him to
4  a new position in which he was dissatisfied. 2015 WL 2438066, at *1, 3. The
5  plaintiff argued he was concerned that he "lacked experience" in the new position and
6  "would be unable to perform well." *Id.* at *1. The court rejected these concerns as
7  "subjective criteria," noting "[a]nyone starting a new position would be expected to
8  face a learning curve, and the typical adjustment period that comes with any new job
9  cannot constitute 'intolerable conditions.'" *Id.* at *3.

Just as in *Grossman*, no constructive discharge occurred here. After starting the Optical Assistant position, Barnett worked a handful of days training and then took weeks of time off before eventually resigning. She found the position tedious, difficult to understand, and stressful. Like the plaintiff in *Grossman*, Barnett was concerned she would be unable to perform well in the position. And just as the court found there, Barnett's subjective reactions reasonably arise from the "typical adjustment period that comes with any new job." *Id.* at *3. They cannot constitute the intolerable work conditions necessary for a finding of constructive discharge.

The FEHA prohibits discrimination; "it does not guarantee employees a stress-free working environment." *Doe*, 43 Cal. App. 5th at 735 (internal quotation marks omitted). Viewing the facts in the light most favorable to Barnett, she was not constructively discharged as a matter of law. *See Scotch*, 173 Cal. App. 4th at 1023.

In sum, Barnett fails to raise a genuine dispute as to whether Costco took any adverse employment action against her. Therefore, Costco is entitled to summary judgment in its favor on the first claim for disability discrimination.

B.   **Retaliation—Claim Two**

To establish a prima facie case of retaliation under the FEHA, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the

protected activity and the employer's action." *Doe*, 43 Cal. App. 5th at 734. The same burden-shifting framework applies. *Yanowitz*, 36 Cal. 4th at 1042.

Costco again challenges the adverse employment action. (Mot. 14.) Barnett puts forward the same adverse employment actions listed above, and they fail here for the same reasons. (*See* Opp'n 26; PSGD 78–80.) Absent an adverse employment action, Barnett fails to establish a prima facie case of retaliation and Costco is entitled to summary judgment in its favor on the second claim.

### C. Failure to Prevent & Wrongful Termination—Claims Three & Seven

California Government Code section 12940(k) requires an employer to "take all reasonable steps necessary to prevent unlawful harassment and discrimination from occurring." Yet, there can be no liability for failure to prevent discrimination when none has occurred. *See Scotch*, 173 Cal. App. 4th at 1021 (citing *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998)). As Barnett's claims for discrimination and retaliation both fail, Costco is entitled to summary judgment in its favor on the third claim for failure to prevent discrimination and retaliation.

A cause of action for wrongful termination in violation of public policy requires that the: (1) plaintiff was employed by the defendant; (2) defendant discharged the plaintiff; (3) violation of public policy was a substantial motivating reason for the plaintiff's discharge; and (4) the discharge caused the plaintiff's harm. CACI No. 2430; *see also Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980) ("[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions."). As Barnett fails to raise a genuine dispute regarding constructive termination, her seventh claim for wrongful constructive termination also fails. Costco is entitled to summary judgment on the seventh claim.

### D. Failure to Accommodate & Failure to Engage—Claims Four & Five

"Two principles underline a cause of action for failure to provide a reasonable accommodation." *Doe*, 43 Cal. App. 5th at 738. "First, the employee must request an

13

1  accommodation," and "[s]econd, the parties must engage in an interactive process
2  regarding the requested accommodation."  *Id.*  The responsibility for a failed
3  interactive process rests with "the party who failed to participate in good faith."  *Id.*
4  "While a claim of failure to accommodate is independent of a cause of action for
5  failure to engage in an interactive dialogue, each necessarily implicates the other."
6  *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 54 (2006).

7        The essential elements of a failure to accommodate claim are: (1) the plaintiff
8  has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e.,
9  can perform the essential functions of the position sought); and (3) the employer failed
10 to reasonably accommodate the plaintiff's disability.  *Jensen v. Wells Fargo Bank*,
11 85 Cal. App. 4th 245, 256 (2000).  A reasonable accommodation is "a modification or
12 adjustment to the workplace that enables the employee to perform the essential
13 functions of the job."  *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th
14 952, 974 (2008).

15       Costco contends it reasonably accommodated Barnett,[4] and she cannot raise a
16 genuine dispute to the contrary, because the undisputed facts demonstrate that Costco:
17 held three JAMs, sent Barnett 134 available positions over more than eight months,
18 and placed her in the Optical Assistant position, which all parties agree accommodated
19 Barnett's physical disability.  (Mot. 17–20; PSGD 72.)  Barnett argues genuine
20 disputes of fact exist regarding whether Costco reasonably accommodated her
21 disability, because Costco should have: (1) sent her additional job postings; (2) offered
22 her more positions after the September 2019 JAM; and (3) reassigned her to some
23 other, preferred position.  (Opp'n 27–29.)

24       *1.    Additional Job Postings*

25       Barnett argues that Costco's failure to send her every job posting available, and
26 specifically the Admin Back Up Cross Training, Membership Cross Training, and

---

[4] The Court finds it unnecessary to consider Costco's additional argument that Barnett is not a "qualified individual," in light of the disposition of this claim.

1 Payroll Clerk positions, raises a genuine dispute about whether Costco reasonably
2 accommodated her disability. This argument lacks logic and merit.

3 It is undisputed that, between August 2018 and May 2019, Costco sent Barnett
4 134 available job openings. Barnett asserts that she expressed interest in "about 1–3"
5 of them but decided that it would be "futile" to apply for any of the 134 positions
6 because "Costco would[ not] let her have" them. (PSGD 25–26.) However, this
7 assertion is based solely on Barnett's declaration, which contradicts her prior
8 deposition testimony where she was asked to list all of the reasons why she did not
9 apply for any of the 134 jobs. (*See* Def. Objs. Pl. Evid. 8.) Costco's objection on this
10 point is therefore sustained. Barnett's uncorroborated and self-serving declaration
11 testimony fails to create a genuine issue. *See Villiarimo*, 281 F.3d at 1061.

12 Moreover, Barnett argues that Costco failed to send her every job posting
13 available, but offers no support for the notion that this somehow constitutes a failure
14 to reasonably accommodate, especially where Costco did send her more than a
15 hundred postings with no response. The decision in *Jensen v. Wells Fargo Bank*,
16 85 Cal. App. 4th 245, is illuminating. There, the court found the employer failed to
17 accommodate the employee's disability where the employee applied for and inquired
18 into numerous positions that she identified for potential reassignment over a period of
19 a year, but the employer rejected her applications or selected other candidates. 85 Cal.
20 App. 4th at 263–65. Here, in contrast, Barnett never gave Costco the chance to
21 accommodate her in eight months of leave because, she claims, she unilaterally
22 predetermined that an inquiry into any position Costco sent her would be futile.[5]
23 Costco sent Barnett weekly emails for more than eight months, with 134 potential
24 positions at five of Barnett's preferred warehouse locations. That Barnett found none
25 of those positions suitable does not negate Costco's efforts to reasonably
26 accommodate her.

---

[5] As noted above, the Court sustains Costco's evidentiary objection to Barnett's declaration on this point.

### 2. *Ongoing Duty to Accommodate*

Next, Barnett argues Costco's failure to offer further reassignment when she notified it "that [the Optical Assistant position] was not working for her" raises a genuine dispute "because the duty to accommodate is ongoing." (Opp'n 28–29.) This argument also fails.

"Once the interactive process [under FEHA] is initiated, the employer's obligation to engage in the process in good faith is continuous." *Scotch*, 173 Cal. App. 4th at 1013. If a reasonable accommodation "turns out to be ineffective and the employee with a disability remains unable to perform an essential function, the employer must consider whether there would be an alternative reasonable accommodation." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001).

Barnett concedes the Optical Assistant position constituted a reasonable accommodation, although not the one she preferred. (*See* Opp'n 28–29.) The undisputed facts establish that Barnett was able to perform the essential functions of the Optical Assistant position within her work restrictions. (PSGD 72.) Therefore, the position was not "ineffective" as an accommodation, *Humphrey*, 239 F.3d at 1138, nor was it "failing" such that "further accommodation [wa]s needed," *Scotch*, 173 Cal. App. 4th at 1013. Barnett's subjective dissatisfaction with the Optical Assistant position does not make it an ineffective accommodation and Costco was not obligated to offer reassignment where Barnett was able to perform its essential functions.

### 3. *Other Preferred Position*

Finally, Barnett argues Costco's failure to offer her a position she preferred over the Optical Assistant position, i.e., her former stocker/cashier position with her proposed accommodations to assign only certain tasks or provide her a buddy, raises a genuine dispute about whether Costco reasonably accommodated her disability. (Opp'n 28.) This, too, lacks merit.

An employer "is not obligated to choose the best accommodation or the accommodation the employee seeks." *Hanson*, 74 Cal. App. 4th at 228. It is also not required to eliminate essential functions from the job to accommodate an employee's disability. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 377 (2015) ("The inability to perform even one essential function is enough to warrant considering other alternatives, such as reassignment.").

The case of *Hanson* exposes the fallacy in Barnett's argument. There, the court found the employer had reasonably accommodated the employee's physical disability by first granting him medical leave and then offering him reassignment to a part-time non-union position that he would be able to perform within his restrictions. *Hanson*, 74 Cal. App. 4th at 226–28. The court rejected the employee's argument that he should have been accommodated in his previous full-time union position with his proposed modifications, which included use of special tools and assigning him shifts where some essential functions of the position were not involved. *Id.* at 227–28. The court concluded that "Hanson cannot be heard to complain that Lucky did not provide these [preferred] measures because Lucky made two other reasonable and effective accommodations available to Hanson." *Id.* at 228.

Here, just as in *Hanson*, Costco granted Barnett medical leave and then offered reassignment when it determined Barnett could not perform certain of the essential functions of the stocker/cashier position. Like the employee in *Hanson*, Barnett wanted to remain in/return to her regular union position by implementing her preferred modifications, which included using a device to pick up debris or scan items, assigning her specific shifts or only certain aspects of the position, and assigning her a buddy. (*See* Opp'n 11; PAUF 126, 216.) Instead, as in *Hanson*, Costco reasonably accommodated Barnett by placing her in the non-union Optical Assistant position, where the parties agree she could perform the essential duties within her work restrictions. (*See* Opp'n 29.) Costco was not obligated to provide

Barnett's preferred accommodation where it provided other accommodations that enabled Barnett to work.

### 4. Conclusion—Failure to Accommodate & Failure to Engage

Barnett fails to raise a genuine dispute of fact regarding whether Costco reasonably accommodated her disability, and the undisputed facts establish that Costco did reasonably accommodate Barnett's disability as a matter of law. Additionally, that Costco reasonably accommodated Barnett's disability forecloses her claim that Costco failed to engage in the interactive process. *Watkins v. Ameripride Servs.*, 375 F.3d 821, 829 n.5 (9th Cir. 2004); *see also Hanson*, 74 Cal. App. 4th at 229 ("We see no reason why this employer should be subjected to liability for failing to engage in the interactive process where the employee was reasonably accommodated not once but twice."). Therefore, Costco is entitled to summary judgment in its favor on Barnett's fourth claim and fifth claims.

### E. Declaratory Judgment—Claim Six; Punitive Damages

As the Court finds Costco is entitled to summary judgment on all claims, Barnett's sixth cause of action for declaratory judgment and her request for punitive damages resolve in favor of Costco as well.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 23.) All dates and deadlines are **VACATED**. The Court will issue Judgment consistent with this Order.

**IT IS SO ORDERED.**

May 6, 2022

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**